39 P.3d 592

**Gary BELK and Carole Cannon, Plaintiffs–Respondents,**

v.

**Allen MARTIN and Meliah Martin, husband and wife, Defendants–Appellants.**

No. 25259.

Supreme Court of Idaho, Boise, September 2001 Term.

Dec. 28, 2001.

vide that the dollar amount of the lease should be $14,768.00 rather than $1,476.80. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Howard and Lois Belk owned farmland located in Canyon County, Idaho. The farm consisted of seven fields totaling 113.6 acres, which had been rented to various tenants for many years. In October of 1995, William Ekberg, brother of Lois Belk, advertised the land for rent in the newspaper. Defendants Allen and Meliah Martin ("Martin") responded to the advertisement. A meeting to discuss the leasing of the farmland was attended by Mr. Martin, Mr. Ekberg, Plaintiffs Gary Belk and Carole Cannon ("Plaintiffs" or "Respondents"), who were the son and daughter of the Belks, and Carole's husband, Warren Cannon.

At the meeting, the parties agreed upon the fields that were to be leased; that the lease was a cash lease; that the payment of rent would be due after harvest; that the payment of rent would be secured by a crop lien; and that the lessors would pay real property and water assessments on the property. Martin took possession of the land immediately thereafter and began preparation work for the upcoming farm season.

A written lease was prepared by Ms. Cannon's attorney in December 1995 but not signed until the parties met again in late February or March of 1996. In between the negotiation of the lease and the signing, both Howard and Lois Belk passed away; Ms. Cannon was appointed personal representative of their estates and signed the lease in that capacity. At no time prior to the signing of the lease did the Plaintiffs review the lease. Before signing the lease, Martin requested that the date of termination be changed from August 15, 1996 to November 15, 1996. Both Mr. Martin and Ms. Cannon initialed the change. No other changes were made to the lease. The lease, as written, provided for rent in the amount of $1,476.80. A farm products financing statement for security of the payment of rent was also signed and subsequently filed.

Greg S. Silvey, Boise, for appellants.

Alexanderson, Davis, Rainey & Whitney, Caldwell for respondents.

WALTERS, Justice.

This is an appeal following a trial without a jury where the district court determined a farm lease contained a unilateral mistake regarding the rental amount. As a result, the district court reformed the lease to pro-

On November 15, 1996, Martin did not pay the rent but retained possession of the farmland; two fields of unharvested corn remained. By letter dated November 27, 1996, Plaintiffs demanded payment of the rent, an accounting and requested that Martin not re-enter the property without permission. A second demand letter was sent to Martin's attorney on December 2, 1996. On December 4, 1996, the parties entered into an interim agreement allowing the harvesting of the corn to be completed. The agreement stated that the amount of rent was disputed and provided that the proceeds from the sale of the crops on the farmland would be placed in an interest bearing trust account up to the disputed amount. For a variety of reasons, including weather and mechanical break-downs, by December 19, 1996, Martin had not yet completed the harvest of the corn. Respondents engaged Sam Hall to combine one of the corn fields. On January 8, 1997, Martin engaged Sam Hall to combine the second field. The Cannons paid Sam Hall $1,191.30 for combining the two corn fields.

A complaint was filed April 17, 1997, whereby Plaintiffs sought reformation of the lease, payment of rent, reimbursement for the corn-harvesting expenses, recovery of interest and for attorney fees and costs. Martin filed an amended answer and counter-claim requesting specific performance of the lease and recovery of his attorney fees and costs. The case was tried without a jury on July 15 and 16, 1998. On the first day of trial, the district court heard and denied Martin's motion in limine seeking to prevent extrinsic evidence from being presented.

Following the trial, the district court issued its Memorandum Decision and Order finding that a valid lease, with a termination date of November 15, 1996, existed. The trial court also determined that the parties had agreed to a rental fee of $130 per acre for 113.6 acres, thereby totaling $14,768.00 rather than the $1,476.80 stated in the rental provision of the lease. The basis for the district court's conclusion was that the lease contained a unilateral mistake made by the Plaintiffs of which Martin had knowledge. The court therefore reformed the rental pro-vision of the lease to $14,768.00. Further, the district court awarded the corn-harvest-ing expenses paid by the Cannons. Attorney fees were not awarded by the district court because the Plaintiffs had not identified the statute authorizing an award of fees.

A hearing was held to reconsider the deni-al of attorney fees and costs and to deter-mine if prejudgment interest should have been awarded. On October 22, 1998, the district court entered an order granting at-torney fees and costs to Plaintiffs pursuant to Idaho Code § 12–120(3), and awarded pre-judgment interest from November 15, 1996 together with discretionary costs. Following the hearing the parties stipulated to $7,500 as the amount of attorney fees to which the Plaintiffs were entitled. On November 23, 1998, the district court filed its amended judgment awarding rent, prejudgment inter-est, harvest costs, discretionary costs, attor-ney fees and court costs to the Plaintiffs. The Martins then pursued this appeal.

## ISSUES ON APPEAL

1. Is the district court's finding that the Martin knew of the Respondents' uni-lateral mistake supported by substan-tial and competent evidence in the rec-ord?

2. Did the district court err by awarding prejudgment interest to the Respon-dents when the funds were not placed in an interest bearing account?

3. Are either of the parties entitled to attorney fees on appeal?

## DISCUSSION

### I.

Appellant Martin asserts that the district court erred by finding the lease contained a unilateral mistake made by the Respondents. Martin argues specifically that the district court 1) erred by allowing extrinsic evidence to vary the terms of an integrated and com-plete contract and by denying Martin's mo-tion in limine which sought to prevent extrin-sic evidence; 2) erred by reforming the lease; and 3) erred by summarily dismissing Martin's defense of quasi-estoppel.

Martin's appeal asks this Court to second-guess the findings of the district court. Martin contends that the district court's findings of fact should be reviewed with the same "clear and satisfactory" standard utilized by the trial court. The scope of review by this Court when the sufficiency of the evidence is challenged, however, is clear. The trier of fact has the primary responsibility for weighing the evidence and determining whether the required burden of proof on an issue has been met. *Sowards v. Rathbun,* 134 Idaho 702, 706, 8 P.3d 1245, 1249 (2000). This Court determines whether the findings of fact by the trial court are supported by substantial, competent evidence. *Id.*

> Review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. A trial court's findings of fact in a court tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. However, we exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found.

*Conley v. Whittlesey,* 133 Idaho 265, 985 P.2d 1127 (1999) (citations omitted).

This Court relies on the trial court to weigh the evidence on the issue of mistake as that issue is a factual question, and the trial court's determination will not be reversed unless the finding of mistake is clearly erroneous. *Moore v. Mullen,* 123 Idaho 985, 987, 855 P.2d 70, 72 (Ct.App.1993) (citing *Cline v. Hoyle & Assoc. Ins., Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985)). "[A] mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence. The mistake must be material, that is, so substantial and fundamental

as to defeat the object of the parties. A unilateral mistake usually does not offer grounds for relief, although it may in certain circumstances." *Leydet v. City of Mountain Home,* 119 Idaho 1041, 1044, 812 P.2d 755, 758 (Ct.App.1991) (citations omitted). A contract containing a unilateral mistake may be rescinded or modified if there has been a misrepresentation or knowledge of the mistake by the other party. *Dennett v. Kuenzli,* 130 Idaho 21, 28, 936 P.2d 219, 226 (Ct.App. 1997); *Cline v. Hoyle & Assoc. Insur., Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985).

#### A) *Extrinsic Evidence*

Martin argues the district court erred by allowing extrinsic evidence to be presented at trial because the farm lease was a complete, integrated and unambiguous contract. Further, Martin asserts that extrinsic evidence is only admissible when a mutual mistake is alleged rather than when the mistake was unilateral. Respondents counterargue that extrinsic evidence is allowed to determine the intentions of the parties when the written instrument does not memorialize the true intent of the parties.

The parol evidence rule provides: If the written agreement is a complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the contract.

*Chambers v. Thomas,* 123 Idaho 69, 72, 844 P.2d 698, 703 (1992) (quoting *Valley Bank v. Christensen,* 119 Idaho 496, 498, 808 P.2d 415, 417 (1991)). Parol evidence, however, is allowed to clarify that a term of the contract was a mistake. *Beard v. George,* 135 Idaho 685, 689, 23 P.3d 147, 151 (2001) (citing *Tusch Enterprises v. Coffin,* 113 Idaho 37, 45 n. 5, 740 P.2d 1022, 1030 n. 5 (1987); *Moore v. Mullen,* 123 Idaho 985, 987, 855 P.2d 70, 72 (Ct.App.1993)). Parol evidence is also admissible to prove that by reason of mutual mistake the written agreement does not express the parties' true intent. *Bailey v. Ewing,* 105 Idaho 636, 641, 671 P.2d 1099, 1104 (Ct. App.1983). Preliminary negotiations are

presumed to merge into the contract and are not allowed to contradict the plain terms of the contract; however this only applies to complete, integrated contracts. *Valley Bank,* 119 Idaho at 498, 808 P.2d at 417. "Whether a particular subject of negotiations is embodied in the writing depends on the intent of the parties, revealed by their conduct and language, and by the surrounding circumstances." *Id.*

 Extrinsic evidence should be allowed where there has been a unilateral mistake made by a party *and* the other party has knowledge of the mistake. This type of unilateral mistake is a ground for reformation where extrinsic evidence may be admissible to show the intent of the parties. *Dennett v. Kuenzli,* 130 Idaho 21, 28, 936 P.2d 219, 226 (Ct.App.1997); *Cline v. Hoyle & Assoc. Insur., Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985).

In this case, mistake, albeit a unilateral mistake, was alleged by Respondents. Since Respondents' mistake in the rental provision was known by Martin, the parties' negotiations and prior discussions as well as other relevant parol evidence was permissible to show the lease contained an error and did not reflect the true intentions of the parties. This Court holds the district court did not err when it allowed extrinsic evidence to be presented by Respondents to show that the lease did not reflect the intent of the parties as to the rental and duration provisions.

### 1) *Untimely Filing of Motion in Limine*

Martin argues the trial court abused its discretion when it denied his motion in limine for being untimely. The motion sought to exclude presentation of any extrinsic evidence pertaining to the unambiguous lease.

The evidence which Martin sought to exclude was properly held by the district court to be admissible. Accordingly, we conclude that the district court did not err in denying Martin's motion in limine.

### B) *Reformation*

 Martin argues that the district court erred by reforming the lease because a unilateral mistake cannot serve as a basis for reformation. Martin testified that he realized that the rental provision in the lease was different than the parties had agreed upon. Martin asserted that he thought the Respondents had changed their minds as to the rental amount. Respondents, however, did not know that the amount stated in the contract was different than agreed upon because they did not read the contract prior to signing it. Respondents argue that their unilateral mistake may be reformed since Martin had knowledge of the mistake.

 "Reformation of an agreement can be awarded if one party has knowledge that the other party suffers from a unilateral mistake." *Graber v. Comstock Bank,* 111 Nev. 1421, 905 P.2d 1112, 1116 (1995). Reformation is proper when the evidence shows that the instrument does not reflect the true intentions of the parties. *Collins v. Parkinson,* 96 Idaho 294, 296, 527 P.2d 1252, 1254 (1974). "By reforming an instrument, the court gives effect to the contract which the parties did in fact make, but which by reason of mistake was not expressed in the writing executed by them." *Uptick Corp. v. Ahlin,* 103 Idaho 364, 372, 647 P.2d 1236, 1244 (1982).

 The district court found that the parties had entered into a valid lease and that Martin knew the rental provision was incorrect. The district court properly recognized that a failure to read a contract does not excuse a party's performance. *Irwin Rogers Ins. Agency, Inc. v. Murphy,* 122 Idaho 270, 273, 833 P.2d 128, 131 (Ct.App. 1992). Although Ms. Cannon failed to read the lease prior to signing, the district court found that since Martin knew of the error and failed to alert the Respondents to it, this was sufficient to excuse performance to the extent of the error. *Id.* The district court further found that because the mistake was unilateral and known by Martin, the equitable remedy of reformation was available even though the mistake was a product of negligence. *Aitken v. Gill,* 108 Idaho 900, 902, 702 P.2d 1360, 1362 (Ct.App.1985).

The district court also determined that the testimony of the Respondents and Mr. Eckberg, as well as the notes in the attorney's

file, corroborated the parties' agreement that the rent would be $130 per acre for 113.6 acres. The district court found the testimony of the witnesses familiar with the farmland supported the fact that $130 per acre was a fair rental value for the farmland, despite Martin's complaints about the conditions of the farmland. "It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses." *Crea v. Crea*, 135 Idaho 246, 16 P.3d 922, 925 (2000) (citations omitted). We will not substitute our view of the facts for the view of the district court.

In its written opinion, the district court discussed the term of the lease as follows:

The Court finds and concludes that there was an agreement that the lease would be for one crop year and that it would terminate following the harvest of the crops which were to be grown. Mr. Martin testified that he believed the parties had negotiated a multi-year lease. When examined, however, Mr. Martin was unable to state the number of years that the lease would run. He testified only that he believed that it was "multi-year." When questioned by his own counsel about whether there was any discussion with Mr. Ekberg about a multi-year lease, Mr. Martin testified that his desire to raise hay on the ground clearly spoke for itself. Mr. Martin further testified about the discussions at the October meeting where the lease was negotiated stating that it went without saying that the tenant prior to him had a multiple year lease. The Court finds that the evidence does not support any such finding about the tenancy of the prior tenant. Mr. Martin admitted in his testimony that he had no knowledge of the terms of the lease by which previous tenant rented the Belk farm. The record does reflect that the prior tenants occupied the Belk farm for a number of years but there is no evidence that they did so under a "multiple" year lease as opposed to an annual lease which was renewed for additional periods. The Court finds and concludes that Mr. Martin's beliefs regarding a multi-year lease were the product of his unspoken thoughts and not a result of the negotiations and

agreements made at the October meeting. At another point in his testimony, Mr. Martin, in response to a question regarding the original August 15th termination date, testified to the effect that "we agreed to a crop year."

The district court thoroughly analyzed and weighed all of the evidence presented at trial and found a valid crop-year lease between the parties, which contained a unilateral mistake made by the Respondents and a termination date of November 15, 1996. Upon a showing of knowledge of the mistake in the rental provision by Martin, the district court reformed the lease to state the correct rental amount of $14,768.00 for the term of the lease. This Court holds that the district court did not err by reforming the lease that contained a unilateral mistake of which Martin had knowledge. Although there is conflicting testimony, the factual findings of the district court are supported by substantial and competent evidence. The district court's findings are not clearly erroneous and therefore are affirmed.

### C) *Quasi–Estoppel*

Martin argues that the district court erred by dismissing his defense of quasi-estoppel. To support his defense, Martin asserts that he relied upon the lease as written and changed his position because of the terms of the lease. Martin initially thought that the lease was to be multi-year and he intended to grow hay on the property. Hay takes a substantial initial investment, the benefit of which will be seen over many of the following years. When Martin discovered the lease was only for a single year, he decided against growing hay and even decided against putting new crops on some of the fields. Respondents argue the record does not support Martin's defense of quasi-estoppel.

Quasi-estoppel prevents a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions. *Lunders v. Estate of Snyder*, 131 Idaho 689, 695, 963 P.2d 372, 378 (1998). Quasi-estoppel, unlike equitable estoppel, does not re-

quire misrepresentation by one party or actual reliance by the other. *Id.*

The record does not reflect that the parties had agreed to a multi-year lease, even though that is what Martin wanted. Although Martin may have changed his mind as to the crops that he grew on the farmland, it does not appear that he was severely disadvantaged. The proceeds from the crops were still more than sufficient to cover the rental costs. This Court affirms the district court's decision dismissing Martin's defense of quasi-estoppel.

## II.

Martin argues that the district court erred by awarding prejudgment interest to the Respondents since the funds from the sale of the crops were not placed in an interest bearing account as agreed upon by the parties. Additionally, Martin asserts that the Respondents failed to mitigate their damages when the mistake of the funds not being placed in an interest bearing account was discovered.

■ The district court judge awarded prejudgment interest of twelve percent on $14,768.00 under Idaho Code § 28–22–104(1). The record with regard to this issue is very scant. Neither the papers filed in conjunction with the hearing nor the transcript of the hearing when the district judge ordered the funds be paid by Martin is included in the appellate record.

■ The standard of review for an award of prejudgment interest concerns an abuse of discretion. *Stueve v. Northern Lights, Inc.,* 122 Idaho 720, 723, 838 P.2d 323, 326 (Ct. App.1992). To review an exercise of discretion, this Court applies the three-factor test previously stated. *Baxter v. Craney,* 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

It is apparent from the record that on February 23, 1998 the district court ordered the parties to place the funds in an interest bearing account. The funds were not transferred to such an account due to an oversight by the Respondents' attorney. The district court could have ordered sanctions for failure to comply with its order. The Respondents could have mitigated the amount that Martin would have to pay had the funds been put in an interest bearing account as initially agreed upon by the parties as well as ordered by the district court.

■ "The duty to mitigate, also known as the 'doctrine of avoidable consequences,' provides that a plaintiff who is injured by actionable conduct of a defendant is ordinarily denied recovery for damages which could have been avoided by reasonable acts...." *U.S. Bank National Ass'n v. Kuenzli,* 134 Idaho 222, 228, 999 P.2d 877, 883 (2000) (quoting *Margaret H. Wayne Trust v. Lipsky,* 123 Idaho 253, 261, 846 P.2d 904, 912 (1993)). In *Kuenzli,* this Court found that the district court erred by offsetting damages, which would have accrued interest if placed in an interest bearing account where the plaintiff was not responsible for placing the monies in such an account. *Kuenzli,* 134 Idaho at 228, 999 P.2d at 883. In this case, however, the Respondents were responsible for placing the disputed funds in an interest bearing account and were ordered by the district court to do so after it was discovered the funds were not in such an account.

■ All that aside, the record is devoid of any evidence that shows the trial judge abused his discretion by not offsetting the interest that could have been earned. Without the motions, supporting documents and transcript, it is difficult to tell if the district court determined that there was no offset because there was no actual interest to offset or if this was even argued. "It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error." *State v. Murphy,* 133 Idaho 489, 491, 988 P.2d 715, 717, (Ct.App.1999); *Farmers Nat. Bank v. Shirey,* 126 Idaho 63, 71–72, 878 P.2d 762, 770–71 (1994).

This Court holds that the appellant has not shown that the district court abused its discretion when it awarded prejudgment interest without an offset for the amount that

could have been earned had the disputed funds been placed in an interest bearing account.

## III.

Both parties request an award for attorney fees on appeal pursuant to Idaho Code § 12–120(3). The award by the district court under that statute is not challenged on appeal. The Respondents are the prevailing party and fees on appeal are therefore awarded on appeal in accordance with Idaho Code § 12–120(3) and I.A.R. 41. *Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 213–14, 984 P.2d 697, 701–02 (1999).

## CONCLUSION

This Court affirms the trial court's finding that the lease contained a unilateral mistake to which Martin had knowledge. The district court properly reformed the lease to reflect the parties' intent. Further, the Court upholds the district court's denial of Martin's motion in limine, the dismissal of Martin's defense of quasi-estoppel and the award of prejudgment interest.

Costs and attorney fees are awarded to the Respondents on appeal pursuant to Idaho Code § 12–120(3) and I.A.R. 41.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.