67 P.3d 93

**Dennis E. DILLON, Plaintiff–Counterdefendant–Respondent,**

v.

**Robert E. MONTGOMERY, Defendant–Counterclaimant–Appellant.**

No. 28453.

Supreme Court of Idaho, Boise, February 2003 Term.

April 3, 2003.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant. Merlyn W. Clark argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent. Donald J. Farley argued.

WALTERS, Justice.

Dennis Dillon and Robert Montgomery entered into a stock purchase agreement whereby Dillon agreed to purchase an automobile dealership from Montgomery. The parties agreed to a set amount for the purchase of the stock plus an amount equal to the net worth of the dealership on the closing date of the transaction. To facilitate the closing and the transfer of stock, the parties placed a portion of the purchase price in an interest bearing escrow account. Following a dispute over the net worth of the dealership at closing, the district court found that Montgomery violated the covenant of good faith and fair dealing with respect to the valuation of the net worth. The court awarded Dillon the escrowed funds, the interest accumulated on the escrow account, and prejudgment interest. Montgomery appeals the district court's award of prejudgment interest. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On February 17, 1997, Dennis Dillon and Robert Montgomery entered into a Stock Purchase Agreement for the sale of Montgomery's Mountain Home Ford–Lincoln–Mercury dealership to Dillon. Pursuant to the agreement, Montgomery was to convey his stock in the dealership for an amount equal to the Closing Date Net Worth ("CDNW") of the dealership plus $1.5 million.

The parties agreed that Dillon was to obtain approval from Ford Motor Company to become a party to the Ford Motor Company Sales and Service agreements prior to closing the transaction. Dillon received approval on April 15, 1997, and attempted to close the transaction with Montgomery. Pursuant to their agreement, Dillon sought access to the inventory to begin assessing the CDNW. Access was denied by Montgomery who demanded the purchase price be increased. Dillon was unwilling to increase the purchase price and filed suit for damages and a decree for specific performance.

The parties settled the dispute and entered into an amendment to the parties' agreement. The amendment specified that $2.3 million was to be delivered to Montgomery at closing and $200,000 of the purchase price was to be held back ("Closing Date Holdback") and placed in escrow. The Closing Date Holdback was to be subject to post-closing adjustments to the CDNW, as provided in the agreements. More specifically, the parties agreed if the dealership's CDNW was less than $800,000, the buyer, Dillon, would be paid the difference between the CDNW and $800,000. This sum would come from the escrow account and was not to exceed $200,000. If the CDNW was greater than $800,000, the seller, Montgomery, would be paid the difference. Any remainder of the hold back amount was to be paid out according to the agreement.

In addition, the parties adopted a method for resolving any differences they might have with the valuation of the CDNW. They agreed that if they were unable to agree on the CDNW the matter would be referred to the accountants who would retain qualified experts, such as Idaho Auto Auction, to assist them in making their determination.

Following closing, both parties had their appraisers calculate the CDNW of the dealership. The parties were unable to resolve the two differing appraisals of the used vehicle inventories, and the accountants could not agree on the other's numbers. Dillon suggested using Idaho Auto Auction to assist the accountants in valuing the used vehicles, however, Montgomery did not agree because he felt Idaho Auto Auction would be biased because of an ongoing business relationship with Dillon. Montgomery suggested another appraiser, and Dillon refused. Dillon retained Idaho Auto Auction for an appraisal of the used vehicle inventory. The parties' accountants agreed to engage an independent accountant to make a determination of the CDNW. The independent accountant attempted to reconcile the three appraisals, and after being unable to resolve the differences between the appraisals, resigned.

Dillon filed this action against Montgomery. Dillon alleged a breach of contract by Montgomery, requested a refund of the $200,000 Closing Date Holdback, sought a declaration of the rights and duties of the parties to the agreements and a determination of the CDNW. A trial was held without a jury. The district court determined that three issues affecting the CDNW were unresolved and needed to be addressed by the court: 1) the actual cash value of the used car inventory, 2) the calculation of the new vehicle inventory value as affected by the manufacturer's holdback, and 3) the treatment of the obsolete parts and accessories. The district court found the CDNW of the automobile dealership was less than $600,000 and entitled Dillon to the entire $200,000 Closing Date Holdback amount plus accumulated interest. The district court further determined that Montgomery had breached the parties' agreement and the covenant of good faith and fair dealing and awarded prejudgment interest. Montgomery filed a motion for reconsideration, which was denied by the district court. Montgomery appeals the award of prejudgment interest.

## ISSUES PRESENTED ON APPEAL

1. Did the district court err in awarding prejudgment interest to Dillon?

2. Are either of the parties entitled to attorney fees on appeal?

## STANDARD OF REVIEW

 The standard of review for an award of prejudgment interest concerns an abuse of discretion. *Belk v. Martin,* 136 Idaho 652, 660, 39 P.3d 592, 600 (2001). To prove an abuse of discretion, this Court applies the three-factor test. The three factors are: (1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason. *Baxter v. Craney,* 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

## DISCUSSION

### I.

The district court clearly perceived the award of prejudgment interest as one within its discretion. *Belk,* 136 Idaho at 660, 39 P.3d at 600. The thrust of the issues raised by Montgomery is whether the district court acted consistent with the legal standards applicable to the specific choices available to it. Initially, Montgomery contends that the amount of damages was not liquidated or capable of mathematical computation. Montgomery further argues that the interest rate was fixed by the contract and that the district court erred in applying the statutory rate of interest.

### A. *Liquidated or Capable of Mathematical Computation*

 Idaho Code § 28–22–104 allows for prejudgment interest at a rate of twelve percent per year in cases of money due on an express contract. Prejudgment interest can be awarded as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation. *Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 609, 38 P.3d 1258, 1265 (2002).

The district court found that an award of prejudgment interest to Dillon was "proper 'in order to fully compensate an injured party for the loss of the use of their money during the pendency of the action.' *Chenery v. Agri–Lines Corp.,* 115 Idaho 281, 289, 766 P.2d 751, 759 (1988)." The district court then determined

> the contract amount was readily ascertainable at the time of the breach; the contract provisions clearly set forth the manner for determining how the holdback should be addressed and released. At the time the breach occurred, both parties knew how the amounts would be computed. Furthermore, the claim is a liquidated claim, because the evidence furnished data which made it possible to compute the amount owed with exactness and without reliance on opinion or discretion. In addition, the fact the case was disputed does not change the Court's decision to award prejudgment interest. As the Idaho Courts have ruled:

> > If a decision to award interest is based on whether the claim was disputed or litigated, "... prejudgment interest would never be awarded—a party could delay payment without incurring interest expense by disputing and litigating any claim." (citations omitted).... A party could delay payment, waiting until trial to challenge the reasonableness of costs to avoid prejudgment interest, and prejudgment interest would only be allowed in rare circumstances.

> [citing *Bouten Const. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 772, 992 P.2d 751, 766 (1999) ].

The district court in denying Montgomery's motion for reconsideration further stated:

> In this case, the method for determining the dealership's inventory value was clearly established in the contract. Furthermore, the contract also established a method for addressing disagreements

short of a suit. As the Court found, Mr. Montgomery breached his contract in several significant ways. He failed to use the appropriate method for establishing the used vehicle inventory. He failed to follow the contract's method for resolving the parties' differences. And he made every effort to thwart Mr. Dillon's efforts to resolve the problems.

The Court would further find that he should not be able to avoid prejudgment interest by simply breaching the contract and then arguing the value was to be determined by the Court. In this case, the damages were easily ascertainable as of the date of the breach by simple mathematical calculation.

The district court clearly recognized that the damages must be liquidated or capable of mathematical computation for prejudgment interest to be awarded. This Court in *Rosecrans v. Intermountain Soap & Chem. Co.*, 100 Idaho 785, 788, 605 P.2d 963, 966 (1980), stated "[i]n the instant case, the contractual liability was readily ascertainable." That statement seems to sum up this case as well.

The parties' agreement clearly laid out the process for the parties to determine the value of the new vehicle inventory, used vehicle inventory, demonstrator vehicles, parts and accessories, gas, oil, grease and body shop inventories and other miscellaneous inventories. The agreement had a contingency plan for the situation that arose here, in case the parties would be unable to agree on the CDNW. The amendment further addressed if the parties could not agree on the CDNW that a properly qualified expert, such as Idaho Auto Auction, would be sought to assist in making the determination, with the costs of such expert borne equally between the parties.

Dillon attempted to follow the contract and went so far as to seek assistance from Idaho Auto Auction at his expense to determine the CDNW and close the transaction. Montgomery's refusal to follow the contract caused Dillon to seek further relief from the district court. By weighing the evidence presented before it on the CDNW, the district court was able to determine the CDNW consistent with the applicable legal standards. The dis-

trict court's decision is well within the discretion granted to it and was made through an exercise of reason.

Montgomery argues that it was necessary to present a great amount of evidence and expert testimony to the district court in order for the trial court to make a determination of the CDNW and that, therefore, the damages may not have been readily capable of mathematical computation. *See Bouten Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 762, 992 P.2d 751, 757 (1999) (denying prejudgment interest because there was conflicting evidence on the price actually paid and the actual value of the products, thereby preventing the damages to be ascertainable by a mere mathematical process). However, the contract between Dillon and Montgomery set forth a procedure for easily determining the actual cash value of the automobiles. The parties were to follow the steps set forth in the contract and if the CDNW was less than $800,000 then the difference would be paid to Dillon, up to $200,000 and if greater than $800,000, the amount would be given to Montgomery; the $200,000 Closing Date Holdback was a liquidated sum. All the parties needed to do was add up the figures. We conclude that the amount upon which prejudgment interest was based was easily ascertainable by mathematical calculation.

Montgomery chose not to follow the procedures set forth by the contract. We agree with the district court's observation that Montgomery can not be allowed to deviate from the contract in order to create what would appear to be an unliquidated sum and thereby defeat Dillon's entitlement to prejudgment interest. Had the parties' agreement been carried out, an independent accountant could have sifted through the figures, resolved the valuations and determine the CDNW. In that fashion, the "damages" recoverable by either party would have been predetermined.

This Court holds that the damages would have been capable of mathematical computation but for Montgomery's breach. *See Opportunity, L.L.C.,* 136 Idaho at 609, 38 P.3d at 1265. The district court's award of prejudgment interest is affirmed.

B. *Statutory Rate of Interest*

 Idaho Code § 28–22–104 provides:

When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:

1. Money due by express contract.
2. Money after the same becomes due.

Montgomery argues that the district court erred in finding that the parties' agreements did not fix a different rate of interest than the statutory rate of 12%.

The district court initially found that Montgomery had not properly preserved his objection on the rate of interest at trial or in his briefing. However, the district court went on to substantively rule that I.C. § 28–22–104 applied to the Closing Date Holdback. The district court awarded prejudgment interest on the Closing Date Holdback offsetting the amount accrued in the escrow account.

The parties' written agreement does not contain a stated interest rate. Nor do any of the provisions of the agreement fix an interest rate applicable to the Closing Date Holdback. The only reference to interest relates to the initial $100,000 holdback and it states that the funds will be placed in an interest-bearing account. Another reference to an investment dealing with the initial holdback amount provides that if the parties are unable to determine where the funds should be invested that the holdback will be invested in United States Treasury Bills. None of these references appear to establish an interest rate to be used other than the statutory rate.

Where the parties fail to specify the interest rate that applies by agreement, then the statutory rate of interest will apply. Therefore, the statutory rate of I.C. § 28–22–104 applies in this case.

This Court holds that the district court did not err in awarding prejudgment interest pursuant to I.C. § 28–22–104 and offsetting the amount by the funds accrued in the interest-bearing escrow account.

---

1. The agreement provides:
 **11.10 Attorneys Fees.** In the event of any action or proceeding arising out of this Agreement or the transactions contemplated hereby,

II.

 Both the Stock Purchase Agreement[1] and I.C. § 12–120(3) provide for an award of attorney fees to the prevailing party. *See Fox v. Mountain West Electric*, 137 Idaho 703, 711, 52 P.3d 848, 856 (2002). Dillon is the prevailing party. Therefore, this Court awards Dillon attorney fees on appeal pursuant to the contract and I.C. § 12–120(3).

## CONCLUSION

This Court affirms the district court's award of prejudgment interest to Dillon. Further, this Court awards attorney fees and costs on appeal to Dillon as the prevailing party.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and Justice pro tem, MELANSON Concur.

the prevailing party will be entitled to all costs, expenses and reasonable attorneys' fees incurred with or without suit and on appeal.