IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47140

| | |
|---|---|
| AGSTAR FINANCIAL SERVICES, ACA, ) <br> nka COMPEER FINANCIAL FLCA, ) <br> ) <br>   Plaintiff-Appellant, ) <br> ) <br> v. ) <br> ) <br> NORTHWEST SAND & GRAVEL, INC., an ) <br> Idaho corporation; GORDON PAVING ) <br> COMPANY, INC., an Idaho corporation; and ) <br> BLACKROCK LAND HOLDINGS, LLC, an ) <br> Idaho limited liability company, ) <br> ) <br>   Defendants-Respondents, ) <br> ) <br> and ) <br> ) <br> TOWN AND COUNTRY BANK, INC., and ) <br> FIRE SERVICE OF IDAHO, INC., ) <br> ) <br>   Defendants. ) | Boise, September 2020 Term <br><br> Opinion Filed: March 22, 2021 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Eric J. Wildman, District Judge.

The decision of the district court is <u>affirmed in part, vacated in part, and reversed in part</u>.

Givens Pursley LLP, Boise, for appellant. Kersti H. Kennedy argued.

Robinson & Associates, Rupert, for respondents. Brent T. Robinson argued.

———————————————

STEGNER, Justice.

In 2007 and 2008, AgStar Financial Services (AgStar), now known as Compeer Financial FLCA (Compeer), loaned substantial sums of money to Northwest Sand and Gravel, Inc., Gordon Paving Company, Inc., and Blackrock Land Holdings, LLC. (The three entities that were indebted to Compeer will be collectively referred to as Gordon Paving.) As a result of financing these loans, AgStar became a secured creditor of Gordon Paving. In 2012, Gordon Paving defaulted on its $10 million obligation to AgStar, which then resulted in AgStar obtaining a judgment of foreclosure

1

on various parcels of real property owned by Gordon Paving. The district court also entered an order allowing the sale of virtually all of Gordon Paving's business equipment to further satisfy the debt. Gordon Paving appealed the district court's decision which allowed AgStar to sell the business equipment.

In *AgStar I*,[1] this Court reversed the district court's order allowing AgStar to liquidate Gordon Paving's business equipment. This decision came long after the business equipment had already been sold at auction. On remand, the district court determined that the correct remedy for Gordon Paving was an award of restitution in the amount of the gross proceeds of the sale plus interest from the date of the sale based on its interpretation of Idaho Code section 28-22-104.

Compeer now appeals from the district court's order denying it an offset for expenses its predecessor, AgStar, incurred in liquidating Gordon Paving's business equipment. Compeer also appeals the district court's order awarding Gordon Paving prejudgment interest on the restitution award from the date the collateral was sold.

For the reasons set out in this opinion, we reverse the district court's order denying Compeer an offset for the auctioneer's expenses incurred which were never received by AgStar. We affirm the district court's order awarding Gordon Paving prejudgment interest; however, we vacate the district court's decision allowing prejudgment interest to run from the date of the sale.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2007 and 2008, AgStar loaned Gordon Paving a total of $10 million pursuant to two government bond agreements.[2] The loan was secured by virtually all of Gordon Paving's real and personal property.[3] By 2012, Gordon Paving had defaulted on its obligations to AgStar after paying only a small fraction of the amount due. Gordon Paving's default resulted in AgStar bringing a foreclosure action against Gordon Paving. On June 19, 2013, the district court entered a judgment

---

[1] *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 161 Idaho 801, 391 P.3d 1271 (2017) [*AgStar I*]; *see also AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 161 Idaho 817, 391 P.3d 1287 (2017) [*AgStar II*]. In *AgStar II*, AgStar brought suit against the individual guarantors of the loan, claiming breach of personal guarantees. *AgStar II*, 161 Idaho at 819, 391 P.3d at 1289. In *AgStar II*, this Court held that "[t]he indebtedness to AgStar, which the Guarantors had guaranteed, was fully satisfied and extinguished in *AgStar I* and there is no basis for any recovery here against the Guarantors." *Id.* at 821, 391 P.3d at 1291. As a result, this decision will be the third appeal regarding the money lent by AgStar (now Compeer) to Gordon Paving.

[2] The United States Department of Agriculture guaranteed 80% of the first loan of $9 million and 70% of the second loan of $1 million.

[3] The real property collateral consisted of five gravel pits and a commercial site. The personal property collateral consisted of Gordon Paving's office equipment and supplies, business equipment, and vehicles. This opinion deals exclusively with Gordon Paving's personal property collateral.

2

and decree of foreclosure against Gordon Paving in the amount of $9,387,069.17 and ordered a sale of all the collateral. Compeer subsequently purchased the five gravel pits and the commercial site via five separate credit bids totaling $7,200,000.[4]

Thereafter, AgStar sought a deficiency judgment for the difference between its credit bids and the unpaid balance of the foreclosure judgment. The district court found that deficiency judgments were "limited to the difference between the fair market value of the real property and the amount of unpaid debt." The district court determined that the fair market value of the real property purchased by AgStar via credit bids equaled $11,710,105, while the debt owed by Gordon Paving totaled only $9,813,340. Thus, because the fair market value of the foreclosed properties exceeded the amount of Gordon Paving's indebtedness, the district court denied Compeer's motion for a deficiency judgment.

AgStar then sought an order from the district court allowing it to liquidate Gordon Paving's personal property collateral via auction, which included "vehicles, equipment, office equipment, and office supplies" that AgStar asserted would be difficult to sell via a sheriff's sale. Gordon Paving objected to AgStar's request, arguing that "absent a deficiency judgment, a mortgagee cannot touch the other assets of the mortgagor." Despite its prior order denying AgStar a deficiency judgment, the district court nevertheless entered an order allowing liquidation of the personal property collateral, which was sold at auction on October 2, 2014.[5] Gordon Paving did not request a stay of execution, nor did it post a bond which would have prevented the sale pending its appeal.

Gordon Paving appealed the district court's decision allowing the personal property to be sold. This Court subsequently reversed the district court's decision allowing the sale. We held that because the *value* of the real property obtained by AgStar via its credit bids exceeded the amount of Gordon Paving's indebtedness, "[AgStar's debt] had been fully satisfied and it was not entitled to seek additional monies from Gordon Paving." *AgStar I*, 161 Idaho at 809, 391 P.3d at 1279. This Court remanded the case to the district court for further proceedings which give rise to this appeal. *Id.*

The current appeal involves a determination of the amount of money Compeer (formerly AgStar) owes Gordon Paving as a result of the sale of Gordon Paving's personal property

---

[4] "[A] credit bid means that the holder of the note bids up to the amount of money due it by the debtor, thereby extinguishing the debtor's debt to the extent of the bid." *Fed. Home Loan Mortg. Corp. v. Appel*, 143 Idaho 42, 44, 137 P.3d 429, 431 (2006).

[5] The district court specifically approved the use of an Article 9 public auction for the sale of the personal property.

3

collateral. The matter was set for a court trial on May 2, 2018, to determine the amount Compeer owed Gordon Paving. A discovery dispute regarding an untimely disclosure of expert witnesses by Gordon Paving delayed the trial. As a result of the late disclosure, the district court continued the trial over Compeer's objection, resetting the trial date to December 11, 2018.[6] The parties initially disputed the valuation of the property. Gordon Paving sought to receive the fair market value of the property sold, while Compeer asserted that Gordon Paving was only entitled to restitution for the amount it received as proceeds from the sale, minus expenses incurred in preserving and liquidating the property.

Compeer moved for summary judgment, arguing that Gordon Paving was only entitled to restitution and that the fair market value of the property sold was irrelevant. Compeer simultaneously filed a motion to exclude Gordon Paving's expert witnesses, who would have testified that the fair market value of the personal property greatly exceeded the amount obtained at the auction. The district court granted both of these motions, ruling that Gordon Paving was entitled to the "gross sale proceeds plus interest." The district court's ruling effectively excluded all of Gordon Paving's expert testimony because the fair market value of the property had been determined to be irrelevant.

In its Motion for Summary Judgment, Compeer also sought a reduction of the amount owed as a result of the expenses it claimed it had incurred in selling the collateral. The district court ruled that Compeer was not entitled to such a deduction. Compeer filed a motion to reconsider that decision which was denied.

At trial, Compeer put on evidence of several defenses to Gordon Paving's claim for restitution, including abandonment, unclean hands, unjust enrichment, and "change of position." Compeer also sought a deduction of expenses for costs associated with conducting the auction and repairing the collateral for sale. The district court rejected Compeer's defenses and denied Compeer's efforts to reduce its obligation to Gordon Paving.

The district court ultimately denied Compeer's motion for reconsideration and entered its decision awarding Gordon Paving restitution in the amount of $332,630.10, plus 12% prejudgment interest running from the date of the sale.

---

[6] Compeer objected to the trial's continuance, contending it would be prejudiced because of the delay. On appeal, Compeer argues that the running of prejudgment interest should, at a minimum, be tolled for the period between the original trial date and the continued trial date because the continuation was solely the result of Gordon Paving's late disclosure of experts.

Compeer then filed a motion to reconsider, which the district court denied. Compeer timely appealed.

## II. STANDARD OF REVIEW

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 943, 454 P.3d 580, 585 (2019) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)).

"Following a bench trial, this Court's review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Wilson v. Mocabee*, 167 Idaho 59, 467 P.3d 423, 428 (2020) (quoting *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017)). Further, "this Court will not set aside a trial court's findings of fact unless they are clearly erroneous." *Kenworth Sales Co.*, 165 Idaho at 942, 454 P.3d at 584.

"We review an award of prejudgment interest under the abuse of discretion standard." *Med. Recovery Servs., LLC v. Neumeier*, 163 Idaho 504, 511, 415 P.3d 372, 379 (2018).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (italics in original).

## III. ANALYSIS

### A. Gordon Paving's recovery is limited to the amount Compeer has been unjustly enriched.

AgStar, pursuant to a valid court order issued in 2014,[7] liquidated Gordon Paving's business equipment to further satisfy its debt. Long after that property was sold, this Court reversed the district court's order, holding that AgStar was not entitled to collect anything further from Gordon Paving due to the value of the real property collateral previously foreclosed upon. *See AgStar I*, 161 Idaho at 815, 391 P.3d at 1285 ("We hold that AgStar was more than made whole by virtue of the foreclosure and was entitled to no other recovery. Thus, we reverse the district court's decision allowing AgStar to sell the personal property.").

---

[7] The order allowing liquidation of the personal property was valid and enforceable at the time the property was sold. However, as noted, that order was later overturned by this Court in *AgStar I*, giving rise to the current appeal regarding the amount owed to Gordon Paving in restitution. *See AgStar I*, 161 Idaho at 815, 391 P.3d at 1285.

This Court remanded the case to the district court, where the central issue to be determined was the amount AgStar owed Gordon Paving as a result of the now wrongful sale of the collateral. The parties initially disputed the computation of value of the property, with Gordon Paving attempting to use experts to seek the fair market value of the property, and Compeer asserting that the proper remedy was restitution. The district court agreed with Compeer, finding that Gordon Paving's proper remedy was in restitution.

In its Motion for Summary Judgment, Compeer also asserted that it was entitled to an offset against the restitution award for the expenses it had incurred in holding the auction and in repairing the property for sale under Idaho Code section 28-9-207.[8] The auction grossed $279,834.50.[9] Masters Auction Service deducted $43,747.43 in commission and other fees before delivering the check to Compeer, reducing the net proceeds from the auction to $236,087.07. Compeer asserts that the restitution award should be reduced by $43,747.43 because it never received that amount as proceeds from the sale and was never unjustly enriched by that amount.

Compeer also argues that it is entitled to an offset for expenses paid to a mechanic in repairing and preparing the property for sale. AgStar claimed it hired Laser Line, a repair shop, to "prepare some of the collateral for the auction," at a total cost of $32,025.12. In testimony elicited at trial, a representative for Compeer explained that Laser Line "did all the inventory. They put everything down, got it all on pallets, got all the vehicles and all the equipment lined up and taken care of, ready for the auction."

The district court ultimately rejected Compeer's claims, finding in part that section 28-9-207(b)(1) was inapplicable to Compeer's claim.[10] The district court further relied on the Restatement (Third) of Restitution to hold that Gordon Paving was entitled to the "*gross* amount of sale proceeds" (italics added). Following the trial, the district court awarded Gordon Paving restitution in the amount of the entire gross proceeds of the sale, plus interest from the date of the sale. Compeer then filed a Motion to Reconsider, which the district court denied.

---

[8] Section 28-9-207 allows a secured creditor in possession of collateral to charge the debtor with "[r]easonable expenses . . . incurred in the custody, preservation, use or operation of the collateral." I.C. § 28-9-207(b)(1).

[9] The auction proceeds of $279,834.50 differs from the amount the district court ultimately awarded Gordon Paving because Compeer sold other items of heavy equipment independently from the auction. These items were added to the gross proceeds from the auction to arrive at the district court's total award of $332,630.10. Compeer has not appealed the district court's award to Gordon Paving for the proceeds from the sale of these items of heavy equipment.

[10] Compeer did not appeal the district court's finding that Idaho Code section 28-9-207(b)(1) was inapplicable. As a result, that underlying conclusion is not part of our analysis.

6

On appeal, Compeer argues that the district court erred in declining to award it an offset for expenses it incurred in auctioning the property and by what it paid to repair the property for sale. Compeer asserts that the district court's decision was based on an "incorrect understanding of the Restatement provisions on restitution." Compeer argues that the defense to restitution of "change of position" applies and should therefore limit the amount of Gordon Paving's recovery. First, Compeer seeks a reduction of $43,747.43 for the auctioneer's commission and other fees associated with conducting the auction. Second, it seeks a reduction of $32,025.12 for the repair and preparation of the collateral by the repair shop Laser Line. In response, Gordon Paving argues that "no deduction of expenses is expressly provided for in Restatement § 18." Gordon Paving further asserts that Compeer failed to prove both its defense of change of position and the amount of the expenses it seeks.

A survey of Idaho case law does not fully resolve the dispute presented to this Court. It does, however, provide guidance via general principles associated with awards of restitution as a result of unjust enrichment. "The essence of the quasi-contractual theory of unjust enrichment is that *the defendant has received a benefit* which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust." *Hertz v. Fiscus*, 98 Idaho 456, 457, 567 P.2d 1, 2 (1977) (italics added). "Recovery under an unjust enrichment theory . . . *is limited to the amount by which the defendant is unjustly enriched*." *Barry v. Pac. W. Const., Inc.*, 140 Idaho 827, 834, 103 P.3d 440, 447 (2004) (italics added). Further, "a party seeking recovery under an unjust enrichment theory must present evidence not only of the value of the services it rendered, but also '*the amount of the benefit which, if retained by the [defendant], would result in [its] unjust enrichment.*'" *Id.* (quoting *Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Ct. App. 1991) (italics added)).

In its brief, Compeer points to authority from neighboring courts which have dealt with the issue of offsets. Notably, Compeer relies on an Oregon Court of Appeals case that dealt with an offset for expenses incurred in the protection of property. *See Cooley v. Fredinburg*, 934 P.2d 505, 509 (Or. App. 1997).[11] There, the court held "that [the defendant] could offset the expenses 'necessarily incurred in [the property's] protection,' but could not offset the fair market value or cost of improvements from the rent it owed." *Id.* (second alteration in original).

---

[11] Even *Cooley* is not entirely analogous to the appeal presented, as expenses incurred in the protection of property differs from expenses incurred to repair or liquidate property.

7

The parties' reliance on the Restatement stems from the apparent lack of Idaho case law directly on point. The crux of the dispute between Compeer and Gordon Paving is whether Section 18 of the Restatement allows for an offset of expenses and whether Section 65 of the Restatement presents a viable defense to Compeer.

1.  Gordon Paving is only entitled to the net proceeds of the auction.

Section 18 of the Restatement (Third) on Restitution and Unjust Enrichment, addressing judgments subsequently reversed or avoided, provides: "A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution *as necessary to avoid unjust enrichment*." Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011) (italics added).[12]

As the district court noted in its decision, no allowance for a deduction of expenses is expressly provided for in the text of Section 18. That section merely allows for a claim of restitution for the disadvantaged party. The district court found this section applicable in determining that Gordon Paving was, in fact, entitled to restitution from Compeer for the *gross* sale proceeds of the auction. In doing so, the district court relied on the following illustration:

> A obtains a judgment against B for $25,000. Property of B worth $35,000 is sold at execution to C, a bona fide purchaser who is otherwise a stranger to the transaction. C is aware that B is prosecuting an appeal from A's judgment. The sale, although properly conducted, brings only $25,000: this amount is paid to A. A's judgment against B is subsequently reversed on appeal. B has no claim to recover the property from C. B has a claim in restitution against A to the extent of A's unjust enrichment. If A's actions have been in good faith, B's claim is for $25,000 plus interest.

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011).

The district court's reliance on this illustration to award Gordon Paving the *gross* proceeds is misplaced. The illustration does not support the conclusion that Gordon Paving would be entitled to the *gross* proceeds. The simplistic illustration fails to account for what happens in the event

[12] Because both parties stipulated to the applicability of Section 18 of the Restatement we will enforce it in this dispute. However, we decline to explicitly endorse its application to future cases. Section 18 of the Restatement specifically cautions against its application to commercial disputes, which this dispute involves, for the reason that specific statutes oftentimes supersede the Restatement. *See* Restatement (Third) of Restitution and Unjust Enrichment § 18 at cmt. a (2011) ("[R]ules governing judicial sales tend to arise in specialized commercial settings, notably foreclosure and bankruptcy, where they are the subject both of extensive statutory regulation and of detailed treatment by more specialized authorities.").

there were expenses incurred in selling the collateral. Although no deduction of expenses would be allowed based solely on the text of this illustration, the Restatement's language that appears elsewhere clarifies that the measure of recovery depends on what is "necessary to avoid unjust enrichment." Section 18 does not state explicitly, nor can it be reasonably inferred, that an entity in Gordon Paving's position would be entitled to the *gross* proceeds of an auction. On the contrary, the Restatement states with specificity that the measure of damages is the "unjust enrichment" experienced by the responsible party. There is simply no suggestion that Compeer was unjustly enriched by the amount the auctioneer withheld from the gross proceeds of the auction.

Section 65 of the Restatement,[13] read in conjunction with Section 18, also provides a basis to award an offset to Compeer. Section 65 provides: "If receipt of a benefit has led a recipient without notice to change position in such manner that an obligation to make restitution of the original benefit would be inequitable to the recipient, the recipient's liability in restitution is to that extent reduced." Restatement (Third) of Restitution and Unjust Enrichment § 65 (2011). Compeer asserts that this defense "allows [it] to avoid paying the entire restitution when [it] has changed position or paid over some of the acquired amounts to a third party."

Comment C to Section 65 clarifies the application of this defense with respect to the expenditure of funds. It states in part:

> When a claimant makes a payment that is otherwise subject to restitution, the fact that the recipient has spent the money is not of itself a defense to liability in restitution, because an expenditure of funds—without more—does not constitute a change of position. To be entitled to a defense on this ground, the recipient must demonstrate a *causal relationship between receipt and expenditure*: in other words, that the expenditure is one that would not have been made but for the payment or transfer for which the claimant seeks restitution.

*Id.* at cmt. c (italics added). In addition, comment A to Section 65 further explains the defense:

> A transaction by which a claimant confers a benefit that is subject to restitution—the primary example in this context being a mistaken payment—will sometimes induce a detrimental change of position on the part of the recipient. If the recipient were thereafter required to restore the original benefit *without deduction*, the resulting liability in restitution would exceed the net enrichment of the recipient attributable to the transaction with the claimant.

---

[13] This Court has previously recognized the applicability of Section 65 of the Restatement, which provides the defense of "change of position" to an unjust enrichment claim. *See Harrentsian*, 161 Idaho at 338, 385 P.3d at 893 (2016) ("Change of position is a defense to unjust enrichment.").

*Id.* at cmt. a (italics added). The comment's reference to "net enrichment" specifically contradicts the district court's conclusion that Gordon Paving is entitled to the "gross enrichment."

The expenditure of money alone is not enough to prove a defense to unjust enrichment; rather, a "causal relationship between receipt and expenditure" must be shown. *Id.* at cmt. c. Here, without the district court's prior order allowing Compeer to auction Gordon Paving's business equipment, Compeer would not have incurred the expenses to Masters Auction Service or Laser Line. Therefore, Section 65 applies to Compeer's expenses incurred in liquidating the business equipment because there is a causal relationship between the order allowing the sale and Compeer's expenses incurred in liquidating the property.

Requiring Compeer to pay an amount in restitution higher than what it received from the sale of the personal property would result in an inequitable windfall to Gordon Paving because Compeer never actually received the *gross* proceeds of the sale. Rather, it received the *net* proceeds, and only after Masters Auction Service deducted its commission and fees. Consequently, Compeer was only unjustly enriched by the net proceeds of the sale. The district court therefore erred as a matter of law when it determined that Gordon Paving was entitled to the *gross* proceeds of the auction.

It would be inequitable to allow Gordon Paving to recover more than the net proceeds of the sale. Therefore, we reverse the district court's decision declining to grant Compeer an offset for the auctioneer's fees and hold that Gordon Paving is only entitled to the net proceeds of the auction sale. That is the amount by which Compeer was unjustly enriched. Given our holding, Compeer is entitled to a reduction in the amount the district court found it owes Gordon Paving by $43,747.43.

2. Compeer is not entitled to an offset for expenses paid to Laser Line because it failed to prove that these expenses were incurred in the way claimed.

Compeer also seeks an additional offset in the amount of $32,025.43, which it claims it paid to the repair shop Laser Line. The district court rejected Compeer's claimed offset, finding that Compeer had failed to prove entitlement to the expenses paid to Laser Line. The district court based its decision on inconsistent testimony elicited from Joseph Oliver, a representative of Compeer. In sum, the district court concluded Oliver lacked credibility. Oliver originally testified that Laser Line was retained not only to repair the personal property collateral, but also to prepare the real property for sale. The district court found this fact significant because:

If [Compeer] were entitled to deduct expenses it would be limited to those related to the personal property collateral sale. As the entity seeking expenses, [Compeer] has the burden of clearly establishing which expenditures [are] related to that sale. . . . The Court finds [Oliver's] testimony to be conflicting and inconclusive on that matter.

"The burden of proving an affirmative defense [ ] rests upon the party who advances the affirmative defense." *U.S. Bank Nat'l Ass'n N.D. v. CitiMortgage, Inc.*, 157 Idaho 446, 451, 337 P.3d 605, 610 (2014). Because Compeer asserted that Section 65 of the Restatement operated as a defense to Gordon Paving's restitution claim, Compeer had the burden of proving its claimed expenses. The law in this regard is well-settled, we will not set aside the district court's findings of fact unless they are clearly erroneous. *Kenworth Sales Co.*, 165 Idaho at 942, 454 P.3d at 584.

The record demonstrates that Oliver provided inconsistent testimony regarding the services that Laser Line performed, and an overall lack of proof that Compeer paid Laser Line the claimed amount. First, Oliver's testimony reflected uncertainty about the purpose for which Laser Line had been hired. On direct examination, Oliver stated the following:

Q. [by counsel] What did AgStar hire Laser Line to do specifically?
A. [by Oliver] Help us clean the facility up, to include the commercial building, organize items.

. . .

Q. Okay. Why did AgStar undertake all of this inventorying and repairs? What was the purpose?
A. Well, two parts. Cleaning up the site to prepare for the real property sale and to create value.

Then, on cross examination by counsel for Gordon Paving, Oliver reiterated that Laser Line assisted in cleaning up the commercial property. He also acknowledged that Compeer did not offer an itemization or invoice of Laser Line expenses into evidence.

Q. [by counsel] And if I understand, your testimony was that not only did they do some work on the equipment, like batteries or a starter, but they also did some cleanup.
A. [by Oliver] Yes.
Q. And they worked on cleaning up the commercial property, the building, and whatever there so it could be such [sic] that it could be sold?
A. Yes.
Q. And you didn't bring with you an itemization to show how those two figures broke out?
A. No.

However, on redirect (which occurred after the trial recessed for lunch), counsel for AgStar attempted to rehabilitate Oliver and the purpose for which Laser Line had been hired.

> [Q. by counsel] Was Laser Line hired to assist with preparations for the real property sale or the personal property sale?
> A. [by Oliver] Personal property sale.
> Q. Okay. Now we talked about, I think, some cleanup activities. My understanding was Counsel was suggesting that maybe that had to do with the sale of the real property, but I want to understand exactly what that cleanup related to.
> A. Well, I do recall that they rented a dumpster because there was [sic] some items that just got thrown away rather than attempting to sell them. They did all the inventory. They put everything down, got it all on pallets, got all the vehicles and all the equipment lined up and taken care of, ready for the auction. That was the vast majority of their work.
> Q. When you say the auction, you mean the personal property auction?
> A. Yes.
> Q. Did they do anything like fix walls, clean bathrooms, do any painting, things like that?
> A. No.
> Q. Nothing physical with respect to the property?
> A. No, they didn't.
> Q. The real property.
> A. No. . . .

The evidentiary exhibits also demonstrate that Compeer failed to offer supporting documentation of the expenses it claims it paid to Laser Line, and no invoice from Laser Line is contained in the record. In fact, the only mention of Laser Line in the trial exhibits is in an expense report prepared by Compeer. Four expenses attributed to Laser Line are marked "auction prep" with dates ranging from August 18, 2014, to October 15, 2014, totaling $32,025.43. Two additional expenses are attributed to Laser Line in the same expense report. One is entitled 'building repairs advance' and the other 'supplies,' totaling $5,810.67.[14]

> "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did," but instead 'inquires whether the findings of fact are supported by substantial and competent evidence." [*Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019).] "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* "Findings of fact that are supported by substantial and competent evidence are not clearly

---

[14] Compeer does not seek these latter two expenses in its claim for an offset; however, these expenses seem to contradict Oliver's ultimate testimony because they indicate that Laser Line assisted in more than just the "auction prep" for the personal property.

erroneous—even in the face of conflicting evidence in the record." Lunneborg[, 163 Idaho at 863, 421 P.3d at 194].

*Kenworth Sales Co.*, 165 Idaho at 942–43, 454 P.3d at 584–85. "[W]e defer to the trial court's special opportunity to determine the credibility of the witnesses who have testified, and to weigh the evidence presented." *Mortensen v. Berian*, 163 Idaho 47, 52, 408 P.3d 45, 50 (2017) (quoting *Carter v. Carter*, 143 Idaho 373, 378, 146 P.3d 639, 644 (2006) (alteration in original).

Based on Oliver's inconsistent and contradictory testimony and the absence of supporting documents in the record regarding expenses purportedly paid to Laser Line, the district court's findings are supported by substantial and competent evidence. The district court was in the best position to gauge Oliver's credibility. We will not substitute our judgment for that of the district court when it comes to factual findings. Therefore, we affirm the district court's order denying Compeer a deduction for the expenses it claimed it paid to Laser Line.

**B. Gordon Paving is entitled to prejudgment interest.**

The district court, in granting Compeer's Motion for Summary Judgment, held that Gordon Paving was entitled to the gross proceeds from the auction, plus interest, pursuant to Idaho Code section 28-22-104. In its Memorandum Decision and Order, the district court reiterated that Gordon Paving was entitled to the gross proceeds from the sale plus "interest accruing at the rate of 12% from the dates of the wrongful sales of the collateral." Compeer filed a motion asking the district court to reconsider the award of interest: however, the district court denied the motion.

Compeer appeals several components of the award of prejudgment interest. Initially, Compeer asks this Court to reconsider and change the applicable standard of review for an award of prejudgment interest. Next, Compeer challenges the district court's awarding of prejudgment interest from the date of the auction because damages were not ascertainable on that date. And finally, Compeer contends the district court erred in declining to suspend prejudgment interest as requested by Compeer because Gordon Paving was solely responsible for a significant delay in the commencement of the trial. For the reasons set forth below, we affirm the district court's decision to award prejudgment interest to Gordon Paving; however, we vacate the district court's decision allowing interest to run from the date of the sale.

1. The proper standard of review for an award of prejudgment interest is abuse of discretion.

In its Memorandum Decision and Order, the district court found that Gordon Paving was entitled to an award of restitution plus 12% prejudgment interest from the date of the auction

13

pursuant to Idaho Code section 28-22-104(1). Compeer filed a motion to reconsider the interest issue, which the district court denied. In denying the motion, the district court correctly noted that "[t]he decision to award prejudgment interest is left to the discretion of the trial court."

On appeal, Compeer acknowledges that this Court's precedent establishes that an abuse of discretion standard applies when reviewing an award of prejudgment interest. However, Compeer argues that this should be reconsidered and overturned. Compeer urges this Court to apply a *de novo* standard of review because it contends that an award of prejudgment interest is a question of statutory interpretation, a question of law, which therefore necessitates a *de novo* standard of review.

Compeer argues that the issue should be "fully reviewable by this Court" because an award of 12% prejudgment interest "can exponentially increase a liability," as Compeer alleges occurred here. Compeer ultimately asks this Court to "reexamine prior case law, and hold that a *de novo* standard is the applicable standard of review."

> When there is controlling precedent on questions of Idaho law "the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice."

*Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)).

This Court's precedent has recently clarified that the appropriate standard of review for an award of prejudgment interest is abuse of discretion. *See Med. Recovery Servs., LLC*, 163 Idaho at 511, 415 P.3d at 379 ("We review an award of prejudgment interest under the abuse of discretion standard."); *see also Dillon v. Montgomery*, 138 Idaho 614, 617, 67 P.3d 93, 96 (2003); *Belk v. Martin*, 136 Idaho 652, 660, 39 P.3d 592, 600 (2001). In *Medical Recovery Services*, this Court noted that an Idaho Court of Appeals case, *Ross v. Ross*, 145 Idaho 274, 277, 178 P.3d 639, 642 (Ct. App. 2007), "reviewed inconsistent case law on the proper standard of review for this issue." *Med. Recovery Servs.*, 163 Idaho at 511, 415 P.3d at 379. However, this Court affirmed the abuse of discretion standard, noting that *Belk v. Martin*, 136 Idaho at 660, 39 P.3d at 600, cited by the Court of Appeals, had not been overruled by this Court. *Id.*

Compeer has failed to demonstrate that the abuse of discretion standard of review for an award of prejudgment interest is (1) "manifestly wrong"; (2) that it has proven to be unjust or unwise over time; (3) or that a change in the law is necessary to "vindicate plain, obvious principles

14

of law [to] remedy continued injustice." *See Greenough*, 142 Idaho at 592, 130 P.3d at 1130. We are unpersuaded that the abuse of discretion standard meets any of this Court's criteria for abandoning precedent, therefore we rely on *stare decisis* to reaffirm that the appropriate standard of review for an award of prejudgment interest is abuse of discretion.

2. The amount of Gordon Paving's claim was not ascertainable for purposes of calculating prejudgment interest until October 19, 2018, when the district court determined that Gordon Paving was not entitled to the fair market value of the collateral.

The district court first held that Gordon Paving was entitled to prejudgment interest in its Order Granting Summary Judgment. Specifically, the district court relied on the Restatement (Third) of Restitution and Unjust Enrichment § 18 to hold that Gordon Paving was only entitled to the sale proceeds of the auction, as opposed to the fair market value of the property. The district court's Memorandum Decision and Order awarded prejudgment interest to Gordon Paving from the date of the sale. However, the case had previously been remanded and on remand, Gordon Paving claimed it was entitled to the fair market value of the collateral, not the amount received by AgStar.

Compeer filed a motion to reconsider the issue of prejudgment interest, arguing that interest should not have been awarded because the amount of Gordon Paving's damages was not ascertainable or capable of being mathematically calculated until the district court denied Gordon Paving's claim and granted summary judgment to Compeer. In denying this motion, the district court relied on the text of the Restatement and principles of equity to hold that an award of prejudgment interest was proper in order to fully compensate Gordon Paving. The district court also held that Gordon Paving's damages were ascertainable in part because "[t]he proceeds received by [Compeer from the sale] were definite and certain mathematical amounts," thus, "Gordon Paving's total amount of damages was easily mathematically calculable by adding the proceeds received together."

On appeal, Compeer first argues that prejudgment interest was inappropriate because Gordon Paving's "claim and Compeer's claims of equitable adjustment were not liquidated or ascertainable." Compeer argues that "the amount due was unascertainable until the [district] court made its findings and conclusions." Compeer next alleges that the district court erred in its application of the prejudgment interest statute, and that interest did not begin to accrue until either (1) the date this Court reversed the district court's order allowing the sale in *AgStar I*, or,

15

alternatively (2) the date the district court entered summary judgment in favor of Compeer determining that restitution was the proper remedy for Gordon Paving.

Gordon Paving responds that "[t]he mere fact that the amounts were disputed and litigated, and various defenses by Compeer were raised, does not make the damages unascertainable." Gordon Paving further asserts that "principles of fairness, equity, and law" allow interest to run from the date of the sale because that "was the day Compeer became unjustly enriched."

Idaho Code section 28-22-104(1) states:

When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
. . . .
    2. Money after the same becomes due
. . . .
    4. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied . . . .

I.C. § 28-22-104. "The essential rationale for awarding prejudgment interest is to ensure that the injured party is fully compensated for its loss." 47 C.J.S. *Interest & Usury* § 114 (2020). "The award of prejudgment interest is not considered punitive or as an additional penalty." *Id.* The district court emphasized the importance of equity in awarding prejudgment interest. *See Chenery v. Agri-Lines Corp.*, 115 Idaho 281, 289, 766 P.2d 751, 759 (1988). "This Court reviews the district court's rulings on equitable remedies for an abuse of discretion." *Climax, LLC v. Snake River Oncology of Eastern Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010). When reviewing for an abuse of discretion, we look to the well-known four-part test set forth in *Lunneborg*, 163 Idaho at 867, 421 P.3d at 198.

"Prejudgment interest can [only] be awarded as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation." *Dillon*, 138 Idaho at 617, 67 P.3d at 96. "This limitation is based upon 'equitable considerations,' which presumably include the notion that a person who could not determine the amount owed should not be charged interest on the sum that is ultimately found to be due." *Ross v. Ross*, 145 Idaho at 276, 178 P.3d at 641 (internal citations omitted). "The mere fact that a claim is disputed or litigated does not render damages 'unascertainable.'" *Id.* at 277, 178 P.3d at 642.

A claim is liquidated [or ascertainable] if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a

fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.

*Id.* (quoting *Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 744, 750 n.2, 874 P.2d 555, 561 n.2 (Ct. App. 1993), *aff'd*, 125 Idaho 409, 871 P.2d 826 (1994)). A claim is unliquidated or unascertainable "where some factor necessary to calculate the amount of damages must be determined by a trier of fact." *Id.*

In *Dillon*, the parties were involved in a breach of contract action where "the contract between Dillon and Montgomery set forth a procedure for easily determining the actual cash value of the [subject matter of the contract]." *Dillon*, 138 Idaho at 618, 67 P.3d at 97. To determine the damages, essentially "all the parties needed to do was add up the figures." *Id.* Based on this calculable amount, the Court awarded Dillon, the non-breaching party, prejudgment interest because the amount of his claim was easily ascertainable. *Id.*

"[P]rejudgment interest is precluded where the amount awardable on one party's claim for a liquidated amount cannot be ascertained because of the other party's *unliquidated* claim." *Ross*, 145 Idaho at 278, 178 P.3d at 643 (italics added) (quoting *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 47, 896 P.2d 949, 955 (1995)). "[W]here there are offsetting claims, one liquidated and the other unliquidated, no prejudgment interest may be awarded on the liquidated claim if the unliquidated claim directly affects or makes uncertain the value of the liquidated claim." *Pocatello Auto Color, Inc.*, 127 Idaho at 47, 896 P.2d at 955 (citing *Ervin Const. Co. v. Van Orden*, 125 Idaho 695, 704, 874 P.2d 506, 515 (1993)).

The amount owed to Gordon Paving was not immediately ascertainable and capable of mathematical computation because of Gordon Paving's claim that it was entitled to the fair market value of the property. The purpose of awarding prejudgment interest is to "compensate an injured party for the time value of money." *Credit Suisse AG v. Teufel Nursery, Inc.,* 156 Idaho 189, 201, 321 P.3d. 739, 751 (2014). However, where the party seeking prejudgment interest claims a recovery that is unliquidated, i.e., fair market value, as opposed to the amount recovered at auction, the amount sought cannot fairly be described as unliquidated. Consequently, until the district court rejected Gordon Paving's claim seeking the fair market value of the property sold, the amount sought was not liquidated and capable of mathematical calculation.

Although the district court was correct in its determination that prejudgment interest was appropriate, the district court erred in allowing interest to accrue from the date of the sale because the amount owed to Gordon Paving was not yet liquidated on that date. This Court's analysis in

17

*Bouten Construction Company v. H.F. Magnuson Company* is instructive on this point. 133 Idaho 756, 763, 992 P.2d 751, 758 (1999). *Bouten* involved a construction contract dispute in which a guaranteed maximum price for a hotel had been set but later increased due to changes made by the project manager during construction. *See Bouten Const. Co. v. M & L Land Co.*, 125 Idaho 957, 974, 877 P.2d 928, 945 (Ct. App. 1994) (*Bouten I*). Bouten sued for breach of contract, seeking an amount in excess of the originally quoted maximum price. *Id.* After a bench trial, Bouten appealed to the Idaho Court of Appeals. *See Bouten I*, 125 Idaho at 957, 877 P.2d at 928. In *Bouten I*, the Idaho Court of Appeals remanded the case to the district court for a determination of whether certain amounts claimed by Bouten were reasonable. *Id.* On remand, the district court found in favor of Bouten and awarded prejudgment interest, finding the amount in damages liquidated. *See Bouten Const. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 759, 992 P.2d 751, 754 (1999) (*Bouten II*).

On appeal to this Court in *Bouten II*, we reversed the district court's award of prejudgment interest. *Id.* at 763, 992 P.2d at 758. We held that "when damages are not readily 'ascertainable *prior to the proceedings on remand*,' they are not liquidated." *Id.* (italics added) (quoting *Long v. Hendricks*, 117 Idaho 1051, 1054, 793 P.2d 1223, 1226 (1990)). This Court further reasoned that, "[u]ntil the district court [on remand] ruled on which of the costs were proven reasonable, the amount of Bouten's damages was not readily ascertainable." *Id.; see also Am. Cas. Co. of Reading, Pa. v. Idaho First Nat. Bank*, 328 F.2d 138, 146 (9th Cir. 1964) (holding that a claim may become ascertainable during litigation, i.e., upon a stipulation by the parties).

Here, Gordon Paving's claim was not ascertainable on the date of the sale. In fact, the amount due to Gordon Paving did not become ascertainable until the district court granted summary judgment in favor of Compeer. In *AgStar I*, this Court determined that Compeer (then AgStar) should not have been authorized to sell Gordon Paving's collateral. As in *Bouten*, this Court remanded the case back to the district court for it to determine the amount owed to Gordon Paving. On remand, Gordon Paving sought the fair market value of the property sold, which would have required expert testimony and a fact finder's determination of the property's value. The district court would have had discretion in determining the amount of Gordon Paving's claim, a determination that is contrary to the requirement that awards of prejudgment interest be "mathematically calculable."

As a result of all that had gone on before, Gordon Paving's claim only became ascertainable on October, 19, 2018, the date that the district court granted summary judgment in favor of Compeer. On that date, the district court determined that the appropriate award for Gordon Paving was restitution. On that date, Gordon Paving's claim was liquidated because the proceeds of the sale and the deductions claimed by Compeer were liquidated amounts. This date also comports with the policies behind awarding prejudgment interest: recovery for the time value of money and providing notice to a defendant of how much interest will accrue.

Although the district court properly recognized that its determination was one within its discretion, it failed to act "within the outer boundaries of its discretion" by awarding interest from the date of the sale. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. The district court did not act consistently with the applicable legal standards. *See Bouten Constr. Co.*, 133 Idaho at 763, 992 P.2d at 758 (holding that "when damages are not readily 'ascertainable prior to the proceeding on remand,' they are not liquidated."); *see also Lunneborg*, 163 Idaho at 863, 421, P.3d at 194. Because an award of prejudgment interest requires a liquidated claim, the accrual could not have begun until the district court rejected Gordon Paving's claim that the appropriate measure of damages was the fair market value of the collateral. The district court abused its discretion in allowing interest to run from the date of the sale, therefore, we reverse. Prejudgment interest began to accrue on October 19, 2018, the date Gordon Paving's claim became ascertainable, and ran until the district court entered its judgment on May 10, 2019.

3. <u>Whether the district court abused its discretion in declining to suspend the running of interest during the trial delay is rendered moot by our holding that interest began to accrue from October 19, 2018.</u>

During the discovery phase of this dispute, Gordon Paving untimely disclosed its expert witnesses, prompting Compeer to move to exclude those experts on both timeliness grounds as well as relevancy grounds.[15] The district court, Judge Huskey,[16] granted Compeer's motion and excluded the witnesses. Subsequently, Gordon Paving sought to disqualify Judge Huskey *nunc pro tunc*, claiming that it had not been aware she was on the list of alternate judges. Gordon Paving also moved to set aside the order issued by Judge Huskey and filed both a motion to continue the trial and a motion to reconsider the use of its expert witnesses. Gordon Paving argued that

---

[15] Gordon Paving's expert disclosures were due on February 5, 2018, but were not filed until nearly a month later on March 2, 2018. Compeer claimed Gordon Paving engaged in a pattern of untimely disclosures throughout this dispute.
[16] A number of district judges heard motions in this case due to the untimely passing of Judge Stoker, the original presiding judge.

continuing the trial would allow for adequate time for Compeer to prepare for and respond to its late-disclosed experts.

At the hearing on these motions (Judge Wilper now presiding), the district court granted Gordon Paving's motion to continue the trial over the objection of Compeer. Compeer asserted that Gordon Paving had engaged in a pattern of "eleventh hour" disclosures, and that Compeer and its witnesses were ready to proceed to trial as scheduled. Further, counsel for Compeer asserted it was prejudiced because the delays increased counsel time and expenses in preparing for trial. The original trial date, which had been set for May 1, 2018, was continued and was set for December 11, 2018. The district court's order granting summary judgment in favor of Compeer was entered in the interim on October 19, 2018. Compeer argued in its final motion to reconsider that because this delay had been caused by Gordon Paving that the imposition of interest for the seven months between the May trial date and the December trial date should be tolled. Specifically, Compeer claims that the delay increased its liability by $24,496.16 in interest. The district court, in denying this motion, rejected this argument on the basis of "equitable considerations."[17]

Compeer now appeals the district court's refusal to toll the running of interest during the time period between the original trial date and the continued trial date, as the continuation was sought by Gordon Paving.

Because we hold that Gordon Paving's damages became mathematically calculable on October 19, 2018, the issue regarding tolling of interest between May and December of 2018 is now moot. Consequently, we decline to address whether the district court abused its discretion in refusing to toll the running of interest.

## C. Neither party is entitled to attorney fees on appeal.

Compeer seeks attorney fees and costs on appeal pursuant to Idaho Appellate Rules 40 and 41 and Idaho Code section 12-120(3). Gordon Paving seeks attorney fees and costs on appeal based on the same provisions. Gordon Paving also seeks attorney fees and costs as the prevailing party under Idaho Code section 12-121 "because the appeal brought by Compeer is frivolous, unreasonable, and without foundation." In response, Compeer asserts that an award of attorney

---

[17] This statement made up the entirety of the district court's reasoning with respect to Compeer's argument for suspension due to the trial continuance: "Last, [Compeer's] request to suspend the running of interest due to a delay of the trial in 2018 is rejected for the same equitable considerations set forth by the Court herein."

fees pursuant to Idaho Code section 12-121 is inappropriate because it has presented "numerous issues of first impression" and argued for a "good faith change in law of prejudgment interest."

Idaho Appellate Rule 40 and Idaho Code section 12-120(3) authorize an award attorney fees to the prevailing party on appeal. *See* I.A.R. 40; I.C. § 12-120(3). Idaho Appellate Rule 41 authorizes an award of costs to the prevailing party on appeal. I.A.R. 41. "Where both parties prevail in part on appeal, this Court does not award attorney fees to either party." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 23, 278 P.3d 415, 425 (2012). Further, "the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis." *Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 814, 303 P.3d 171, 173 (2013) (quoting *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005)).

Because we reverse in part, vacate in part, and affirm in part the district court's decision below, both Compeer and Gordon Paving are prevailing parties. Specifically, Compeer prevailed on its claim for a deduction of expenses it paid to Masters Auction Service in liquidating Gordon Paving's collateral. Compeer also prevailed in its request to delay the accrual of prejudgment interest. Gordon Paving prevailed on the issue of proof of expenses Compeer claimed it paid to Laser Line. Gordon Paving also prevailed on the award of prejudgment interest itself. "Without a prevailing party, it is not necessary to discuss whether this appeal involves a 'commercial transaction' under § 12–120(3) or whether the appeal was brought or defended unreasonably under § 12–121." *Caldwell v. Cometto*, 151 Idaho 34, 41, 253 P.3d 708, 715 (2011). Because both parties have prevailed, we decline to award attorney fees. For similar reasons, we decline to award costs.

## IV.    CONCLUSION

For the foregoing reasons, this Court reverses the decision of the district court in part, vacates the decision in part, and affirms the decision in part. First, the district court erred when it rejected Compeer's claim to an offset for expenses withheld by Masters Auction Service from the auction's gross proceeds, therefore, that portion of its decision is reversed. Second, the district court's decision to reject Compeer's claim to an offset for expenses it alleged it paid to Laser Line is affirmed. Third, the district court did not abuse its discretion in awarding Gordon Paving prejudgment interest and the interest award itself is affirmed. However, the district court did abuse its discretion when it allowed prejudgment interest to accrue from the date of the sale of Gordon Paving's collateral because the amount of damages was not yet mathematically calculable for the

reasons stated. Accordingly, the amount of the prejudgment interest award is vacated and remanded to the district court for a calculation of prejudgment interest running from the date of the district court's decision on summary judgment on October 19, 2018. Finally, neither party is entitled to attorney fees or costs on appeal.

Justices BURDICK, BRODY, MOELLER and TROUT, J. Pro Tem CONCUR.